## Commonwealth v. McKaig

*John H. Maurer*, assistant district attorney, for Commonwealth.

*Randolph W. Childs*, for defendant.

*Ralph M. Bashore*, Secretary of Labor and Industry, p. p.

GORDON, JR., P. J., July 12, 1937.—This is an appeal from a summary conviction before a magistrate. Defend-

ant is president of the Philadelphia Skating Club and Humane Society, an amateur skating organization which, together with the International Figure Skating Club of Philadelphia, held a joint figure skating competition or meet on April 7, 1937, at the Arena, located at 4530 Market Street, Philadelphia, a place commonly used for public entertainment but which had been privately leased for the meet by the two organizations mentioned. The meet, which was held under the immediate direction and control of defendant as agent or representative of these organizations, lasted during the afternoon and evening, and consisted of a series of amateur championship skating contests in which only members of the clubs participated, and, in addition, during the evening, three exhibitions of skating were given, one by a professional skater hired for the purpose, another by an elderly gentleman, an amateur skilled in the art, and the third by Shirley Foster, a nine-year-old child. The last two received no compensation, either directly or indirectly, for the exhibitions which they gave, and the professional skater alone was paid for his exhibition. The only persons employed during the meet were the usual ushers and attendants of the Arena, and a band of hired musicians. The meet was exclusively an amateur enterprise, although, in order to defray expenses, but in no sense for profit, the public was admitted to view it at a fixed charge per person.

Defendant was found guilty of violating the Child Labor Law of May 13, 1915, P. L. 286, and its amendments, and sentenced to pay a fine of $200 and to undergo imprisonment for 10 days in the County Prison. From this conviction defendant took the appeal now before us. The magistrate's transcript indicates that the conviction was under section 2 of the act, although the Commonwealth contends that defendant violated sections 2, 4, 7 and 21 thereof.

Under the law governing appeals from summary convictions, the case is before us de novo, and the question

presented for our decision is whether defendant violated the act in question by procuring or permitting the child, Shirley Foster, to give her skating exhibition in the foregoing circumstances. Child labor laws are highly remedial in character, being intended to protect children, in their healthful development to adult age, from exploitation by business and industry, and to ensure to them, in the interests of the public welfare, that condition of freedom from debilitating spiritual and physical labor in which alone they can develop into fully efficient economic and social units of the State. Hence such laws should receive a reasonably liberal interpretation to effect their beneficent objects. Nevertheless their penal provisions cannot be extended by interpretation to include those activities of children which are not essentially "work" in its ordinarily accepted meaning, or which cannot fairly be said to tend to the exploitation of the labor of children for commercial or other remunerative purposes. Many activities of both children and adults do not fall within the category of work when engaged in as forms of play, or for reasons of health or personal development, although when they are performed for a livelihood, for financial gain, or as purely public entertainment they are manifestly work within the intendment of child labor laws.

The determination of the question whether a particular child activity is "work" within the meaning of such laws depends altogether upon the circumstances of each case, and there is no fixed and universal rule which will solve the diversified questions which can arise under different sets of facts. Thus, skating, which is almost exclusively a form of sport or play, would not generally be work within the meaning of such laws. On the other hand, the professional skater, who gave the sole paid exhibition in the case before us, was at the time undoubtedly performing work for his livelihood. Again, had he given the same exhibition free of charge, and as a participant in the

amateur games, it would not have been work. Neither does the receipt of compensation exclusively determine the question. A child's activities may be directed to what to it seems a form of pleasure or play, for which it may receive no compensation, yet they may be so linked with commercial channels, as by the sale of the product of its labors, that they become work in contemplation of law. On the other hand, the reverse of this situation, so far as the child's attitude is concerned, may remove its labor from the category of work. Thus, manual training, in which a child may find no pleasure, but which is imposed upon it solely for educational purposes, would not be work even though, incidentally, the product of its labors might ultimately reach commercial channels.

It is unnecessary indefinitely to multiply examples of the problems which can arise in this connection. Each must be solved as it arises, by a consideration of the spirit and intent of the child labor laws and of the evils which they are intended to guard against. Nor do we consider it necessary to review the decisions of this and other States under similar laws. None of them is directly in point. Some turn upon the interpretation of acts not altogether similar in language to our own; others deal with different aspects of the subject; and, even in those which involve the determination of the meaning of the word work when used in connection with child labor, the differentiating facts of each case render it of little, if any, value as a controlling precedent of the one before us. The pertinent provisions of our own child labor laws forbid children being forced or permitted to work for compensation, whether it be received by the child directly or indirectly, or to work at all in, about or in connection with any establishment where work is performed by others for compensation. With respect to the first part of this prohibition, which forbids children working for compensation, whatever difficulties may arise in its application to a particular case will relate primarily to factual proofs

of the receipt of compensation for the child's labors, rather than to an interpretative determination of the scope and intent of the language used. It is in cases covered by the latter provision that the greatest difficulty of interpretation will arise, for under it the principal problem will be whether the activity in question is work within the meaning of the act, which nowhere defines the meaning to be given to this word in it. A school is certainly an establishment where others are paid for work. The teachers and all the personnel of such an establishment are performing work when the school is in operation; yet it cannot be said that the pupils are working "in, about or in connection with" such a place, for clearly their labor at the instruction given them is not work within the ban of such laws. The true test would seem to be whether or not the child's activities at a particular establishment are so connected with the work of others as to be immediately supplementary thereto or in direct aid thereof.

While the Arena is customarily used for public entertainment as a business or commercial venture, in the present case it had been privately leased by a group of persons for the pursuit of a healthful amateur game or sport. The employment of its usual attendants, and of the professional music supplied for the entertainment of those participating in the meet, was subservient and incidental to the sport. This no more determines the character of the meet than would the employment of servants at a social game of cards. So also, the admission of the public at a fixed charge did not alter the nature of the sport. To hold otherwise would make the admission of the public to view a college football game the criterion of the nature of the game being played.

With respect to the professional exhibitor, we think that, while it may be conceded that he was performing work for a livelihood, his labor did not render the participation of the child in the purely playful and amateur

sport of skating work within the meaning of the child labor laws. And this is so, because, first, the professional's work was analogous to that of the musicians, ushers and attendants, and, second, because his work had either ended or not begun when the child gave its exhibition of skilled skating. It would be as logical to hold that a place where work may have been done in the past could not for that reason be used thereafter as a playground for children. The time that may elapse between the cessation of work and the beginning of play at a given place is ordinarily of no importance. So long as they are not contemporaneous or complementary to each other, the one cannot be said to affect the other. This child's skating was in no way linked with the professional's exhibition, and, when she gave her amateur exhibition, no work was being done for compensation by others. Her display of skill was not performed as a part of the work of the professional.

To sum up the situation in the case before us, the child's skating was not in itself work: no compensation for her exhibition was received by anyone, either directly or indirectly; and the place at which her exhibition was given was not then being used as a place of public resort, but was privately leased for a purely private purpose. None of the essential elements of work was present in her exhibition, and for these reasons we are of opinion that defendant was not guilty of violating any of the provisions of the child labor laws of the Commonwealth.

Accordingly, the appeal is sustained, the decision of the magistrate is reversed, the defendant is adjudged not guilty of the offenses charged against him and is discharged.